UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ERRETT TANNER ELWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| HANOVER INSURANCE COMPANY, | ) |
| | ) |
| Intervening Plaintiff, | ) |
| | ) |
| v. | )    No.:   3:24-CV-509-TAV-DCP |
| | ) |
| GENERAC POWER SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

This civil matter is before the Court on defendant's motion for summary judgment [Doc. 28]. Plaintiff Errett Tanner Elwood and intervening plaintiff Hanover Insurance Company ("Hanover") each responded [Docs. 31, 32, 34], and defendant replied [Docs. 33, 35]. Accordingly, this matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, defendant's motion for summary judgment [Doc. 28] will be **GRANTED**, and this case will be **DISMISSED.**

## I.    Background

This is a products liability action. On January 11, 2024, plaintiff sustained severe injuries, primarily to his hands and face, while opening the gas cap of a portable generator running in the back of his work vehicle [Doc. 1 ¶¶ 16, 17]. Plaintiff brings claims against defendant, which designed, manufactured, and sold the generator, alleging that the

generator "overheated and pressurized causing fuel to expel and ignite when [p]laintiff opened the gas cap" [*Id.* ¶¶ 14, 16, 17; Doc. 7 ¶ 14].

### A. Plaintiff's Accident

In May 2023, plaintiff began work as a project manager at CFI Foam, Inc. ("CFI"), a company that injects cinder block walls with expandable foam [Doc. 28-1, p. 2]. Plaintiff's training involved learning how to mix a resin compound with a catalyst to create the foam insulation and how to spray the foam [*Id.* at 4]. Plaintiff often worked with his brother, Forrest Elwood, who was also employed by CFI [*Id.* at 9–10]. Plaintiff traveled each week to inject spray foam into grocery store exterior concrete blocks [*Id.* at 5–6].

On January 11, 2024, plaintiff was transporting a generator manufactured by defendant in a trailer attached to the back of his work truck [Doc. 28-1; Doc. 27-2, p. 3]. Plaintiff alleges that CFI owned the generator [Doc. 1 ¶ 15], which was using separate tanks to power two submersible heaters, warming the resin and catalyst to create the spray foam [Doc. 27-1, p. 10; Doc. 27-2, p. 3]. On that day, plaintiff and his brother worked at a grocery store in Virginia, until approximately 6:15 p.m. [Doc. 28-1, pp. 7–8]. They arrived at a hotel between approximately 7:00 p.m. and 7:30 p.m. [*Id.* at 12]. Plaintiff's brother filled the gas tank in the generator and started it before they retired to their separate rooms for the night [*Id.* at 14, 18–20].

Later that evening, plaintiff stepped outside to examine the generator because he heard it "bogging down" while he was in his hotel room [*Id.* at 13]. Without turning off the generator, plaintiff untwisted the gas cap, and it immediately blew out of his hands and exploded [*Id.* at 21–22]. The generator caught fire, and plaintiff sustained second and

2

third-degree burns to his hands and face [*Id.* at 21–23; Doc. 28-2, p. 7]. On December 30, 2024, plaintiff filed this action alleging strict products liability, negligence, breach of implied warranties, and punitive damages [*See* Doc. 1].

### B. Expert Witness Disclosures

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), plaintiff alleges that it disclosed its expert witnesses, including Dale J. Cagwin, a mechanical engineer, on September 18, 2025 [Doc. 34, pp. 2–3; Doc. 35-1].[1] Defendant alleges that it did not receive this notice by the expert disclosure deadline [Doc. 35, p. 2].

In addition, defendant alleges that it disclosed two expert opinions in accordance with the Court's Scheduling Order: David H. Smith, a certified fire inspector, and Daniel Adams, a professional engineer, certified fire and explosion investigator, and certified fire investigation instructor [*See* Doc. 27; Doc. 29, p. 13]. In his report, Adams reviewed the owner's manual provided with the generator at issue to assess its compliance with codes and industry standard safety warnings, including standards governed by the Code of Federal Regulations, the Consumer Product Safety Commission, the Occupational Safety and Health Administration, the National Fire Protection Association, and the American National Standards Institute [Doc. 27-2, pp. 4–7]. Adams ultimately found that the safety content in the owner's manual met legal requirements and industry standards [*Id.* at 7].

---

[1] United States Magistrate Judge Debra C. Poplin has granted defendant's motion to exclude the expert testimony of Cagwin based on plaintiff's failure to comply with the disclosure requirements of Federal Rule of Civil Procedure 26 as well as an actionable sanction pursuant to Rule 37 [Doc. 41]. Accordingly, the Court will not consider that expert witness evidence in the context of this motion for summary judgment.

3

In his report, Smith analyzed, among other things, the origin and cause of the fire, the progression of the fire, and the use of the generator involved [Doc. 27-1, p. 4]. Ultimately, Smith concluded that: (1) the fire started in the enclosed trailer; (2) the generator was altered prior to the fire occurring; (3) the generator was in a confined and closed environment; (4) the generator was mounted in an unsafe manner in the immediate proximity of combustibles and ignitable liquids; (5) the generator was used in a manner inconsistent with the owner's manual; (6) the "[o]pening of the gas cap while the generator is operating was a misuse of the generator"; (7) a forensic examination could not be conducted because the remains of the trailer, its contents, and the generator were not retained; and (8) no expert opinions were provided by plaintiff [*Id.* at 24–25].

On October 9, 2025, the Court granted Hanovers's motion to intervene [Doc. 25]. Hanover filed a complaint on October 10, 2025, incorporating by reference the allegations contained in plaintiff's complaint against defendant [Doc. 26]. Defendant has now moved for summary judgment [Doc. 28].

## II.     Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine

4

dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party can satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty*., 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)). A party opposing a Rule 56 motion has the duty to affirmatively present and point out *specific evidence in the record* sufficient to justify a jury decision in her favor. *See* Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *Anderson*, 477 U.S. at 256. The nonmoving party cannot simply rely on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. And merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248; *accord McLemore v. Gumucio*, 619 F. Supp. 3d 816, 823 (M.D. Tenn. 2021).

## III. Analysis

In support of its motion for summary judgment, defendant primarily argues that plaintiff cannot establish that the generator was unreasonably dangerous or defective

because plaintiff has not provided expert testimony as required under the prudent manufacturer test [Doc. 29, pp. 11–15].

### A. Products Liability Claims

Products liability suits in Tennessee are governed by the TPLA, which provides that "[a] manufacturer or seller of a product shall not be liable for any injury to a person . . . caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a).

In this case, plaintiff brings claims of strict products liability, negligence, and breach of warranties, which are governed by the TPLA regardless of the theory of recovery [*See* Doc. 1]. *See Coffman v. Armstrong, Int'l Inc.*, 615 S.W.3d 888, 895 (Tenn. 2021) ("[T]he TPLA superseded common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product."); *see also Strayhorn v. Wyeth Pharm., Inc.*, 882 F. Supp. 2d 1020, 1028 (W.D. Tenn. 2012) (finding that the TPLA's definition of "product liability action" was "cast so expansively as to cover claims related to a defective product under legal theories of many kinds, whether sounding in negligence, misrepresentation, or breach of warranty").

To establish a prima facie products liability case under the TPLA, "the plaintiff must show: (1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Greene v. LEDVANCE LLC*, No. 3:21-CV-

6

256, 2024 WL 1319712, at *14 (E.D. Tenn. 2024) (quoting *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008)).

### 1. Defective and/or Unreasonably Dangerous

Turning to the first requirement under the TPLA, "defective conditions" and "unreasonably dangerous conditions" are alternatives, so a plaintiff may rely on either or both. *Merrell v. Summit Treestands, LLC*, 680 F. Supp. 3d 907, 915 (E.D. Tenn. 2023) (citation omitted). "[A] plaintiff may demonstrate that a product was defective or unreasonably dangerous through direct evidence, circumstantial evidence, or a combination." *Greene*, 2024 WL 1319712, at *14 (quoting *Sigler*, 532 F.3d at 483).

### a. Unreasonably Dangerous

Defendant first argues that plaintiff cannot prove that the generator was unreasonably dangerous under the prudent manufacturer test because he did not disclose expert opinions prior to the deadline on September 17, 2025 [Doc. 29, pp. 11–13]. Defendant submits that the prudent manufacturer test applies in this case because the generator at issue is "a complex piece of machinery" [*Id.* at 11]. In support, defendant relies heavily on Adams' expert report, which explains the process by which the generator powers appliances and devices [*Id.*; Doc. 28-3]. Moreover, defendant argues that the only alleged defect by plaintiff is that the generator "overheated and pressurized," which concerns "technical design details, engineering choices, flammability issues, fire hazards[,] or failure to properly warn issues" [Doc. 29, p. 12]. Defendant asserts that these issues cannot be examined based on the everyday experience of ordinary consumers, making the generator more complex than a can opener or a coffee pot [*Id.*].

7

In response, plaintiff agrees that the prudent manufacturer test applies, and he relies on his expert disclosure of Cagwin [Doc. 34, pp. 2–3].[2]

Hanover also responded to defendant's motion for summary judgment, arguing that the consumer expectation test applies because the generator is not so complex such that an ordinary consumer would have no reasonable expectation of its safe operation [Doc. 32, pp. 2–3]. In particular, Hanover submits that a person who often works with generators would reasonably expect the engine and turbine not to catch on fire when the gas cap is removed during operation [Id. at 3–4]. Hanover also maintains that defendant's motion for summary judgment is premature because the upcoming depositions of defendant's representatives could also inform whether the product was dangerous or defective [Id.].[3] Hanover notes that it cannot present facts essential to justify its position because it was unable to participate in significant discovery prior to its inclusion in the action, and it attaches a declaration in support [Id. at 4–5; Doc. 32-1].

In response, defendant states that neither plaintiff nor Hanover have attempted to disclose expert witnesses or requested or scheduled depositions [Doc. 33, p. 2]. Moreover, defendant states that Hanover has not offered any factual, legal, or expert support for its position that the consumer expectation test applies, yet defendant has provided expert proof showing how the generator is complex [Id. at 2–3]. In addition, defendant responds that

---

[2]  As noted previously, Judge Poplin has already entered an order excluding plaintiff's expert witness testimony [Doc. 41].

[3]  Hanover further argues that defendant's motion for summary judgment is premature because the Court has not entered an order excluding plaintiff's expert witness testimony [Doc. 32, p. 1]. However, the Court finds that this argument is now moot since the Court has entered an order excluding Cagwin's testimony [Doc. 41].

8

Hanover has not offered any rebuttal evidence to show that there was something wrong with the generator that caused plaintiff's injuries [*Id.* at 3]. Lastly, defendant contends that Hanover delayed moving to intervene until mid-2025, months after this action was filed [*Id.* at 4]. Defendant argues that Hanover has not served any formal or informal discovery, and it has the owner's manual because it was attached to defendant's motion for summary judgment [*Id.*].

> Under the TPLA, a product is "unreasonably dangerous" if it is:
>
> dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102(8).

"Tennessee law provides two tests for determining whether a product is unreasonably dangerous" — the "consumer expectation test" and the "prudent manufacturer test." *Greene*, 2024 WL 1319712, at *21 (quotation omitted). "The tests 'are not exclusive of one another and therefore either one or both of [them] are applicable to cases where the product is alleged to be unreasonably dangerous.'" *Id.* (quoting *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001)).

"The consumer expectation test assesses 'whether the product's condition poses a danger beyond that expected by an ordinary consumer with reasonable knowledge.'" *Id.* (quoting *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 750 (Tenn. 2015)). Under the consumer expectation test, "a product is not unreasonably dangerous if the

ordinary consumer would appreciate the condition of the product and the risk of injury." *Id.* (quoting *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527, 530 (Tenn. 1996)).

"Under this test, '[t]he manufacturer or seller's conduct, knowledge, or intention is irrelevant.  What is determinative is what an ordinary purchaser would have expected.'" *Hill v. Century Arms, Inc.*, 760 F. Supp. 3d 576, 760 (E.D. Tenn. 2024) (quoting *Ray ex rel. Holman*, 925 S.W.2d at 531).  "Obviously, this test can only be applied to products about which an ordinary consumer would have knowledge."  *Id.* (quoting *Ray ex rel. Holman*, 925 S.W.2d at 531).  "For example, ordinary consumers would have a basis for expectations about the safety of a can opener or coffee pot, but, perhaps, not about the safety of a fuel-injection engine or an air bag."  *Id.* (quoting *Ray ex rel. Holman*, 925 S.W.2d at 531).

Therefore, the consumer expectation test may not be used to "establish[] the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation." *Id.* (quoting *Brown v. Raymond Corp.*, 432 F.3d 640, 644 (6th Cir. 2005)) (internal quotation marks omitted).  The consumer expectation test is, "by definition, buyer oriented[.]" *Maness v. Boston Sci.*, 751 F. Supp. 2d 962, 968 (E.D. Tenn. 2010) (quoting *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 428–29 (6th Cir. 2007)).  Because the test requires a jury to "employ its own sense of whether the product meets ordinary expectations," expert testimony is not required.  *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 210–11 (6th Cir. 2015) (quoting *Jackson*, 60 S.W.3d at 805–06).

On the other hand, the "seller oriented" prudent manufacturer test, *Maness*, 751 F. Supp. 2d at 968 (quoting *Johnson*, 484 F.3d at 428–29), "assesses whether, given the

10

imputed knowledge of the condition of the product, a prudent manufacturer would place

such a product into the stream of commerce." *Tatham*, 473 S.W.3d at 750 (citing *Ray*, 925

S.W.2d at 530). The prudent manufacturer test "employs a risk-utility balancing of various

factors and . . . requires expert testimony with respect to the prudence of a defendant's

decision to market the product." *Kines v. Ford Motor Co.*, 558 F. Supp. 3d 614, 628 (W.D.

Tenn. 2021) (citations omitted). The Western District of Tennessee summarized case law

on this issue as follows:

> Courts interpreting Tennessee law have concluded that application of the consumer expectation test is appropriate in cases involving **seatbelts**, *Jackson*, 60 S.W.3d at 804–05 ("[a] seat belt is a familiar product whose basic function is well understood by the general population"); **tires**, *Tatham*, 473 S.W.3d at 751 (a tire is not "complex" for purposes of applying the consumer expectation test, despite the complexity of the manufacturing process, because the "general driving populace understands the basic function and purpose of a tire"); **airbags**, *Sigler*, 532 F.3d at 485–86 (an airbag is a familiar product and consumers and manufacturers expected it to deploy in the type of high speed frontal crash alleged by plaintiff); and **ATVs**, *Whirley v. Kawasaki Motors Corp., USA*, No. 1:04cv1145 T/An, 2007 WL 9706819, at \*\*8–9 (W.D. Tenn. Feb. 21, 2007) (the consumer popularity of ATVs, along with their relatively simple design involving four wheels, suspension, disc brakes, and a wide wheel base, provide sufficient familiarity to give the ordinary consumer a reasonable expectation about ATV safety), but **not complex tools**, *Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 929–30 (6th Cir. 2003) (a novel automotive repair tool so complicated it was unlikely even the average auto mechanic would have a reasonable expectation of its safety without training should not be evaluated under the consumer expectation test); **car radiators**, *Simpson v. O'Reilly Auto. Stores, Inc.*, No. 2:13-cv-2684-SHLcgc, 2014 WL 11514969, at \*6 (W.D. Tenn. Dec. 30, 2014) (consumer expectation test inapplicable because, despite their commonness, "ordinary consumers do not have the sort of familiarity with radiators that would engender expectations as to how they would perform"); **medical bronchoscopes**, *Young v. Olympus Am., Inc.*, No. 07-2547-STA, 2012 WL 252645, at \*\*5–6 (W.D. Tenn. Jan. 26, 2012) (consumer expectation test inapplicable because the ordinary consumer, lacking knowledge that proper practice protocols for bronchoscope at issue required cleaning and flushing with disinfectant between patients to prevent spread of

11

infection, would not have minimum safety expectations with respect to the product); **metal restraint rods on a sophisticated amusement park ride**, *Alexander v. Zamperla*, No. E2009-01049-COA-R3-CV, 2010 WL 3385141, at \*\*2, 7 (Tenn. Ct. App. Aug. 27, 2010) (finding prudent manufacturer test more appropriate); **industrial forklifts**, *Brown v. Raymond Corp.*, 432 F.3d 640, 642, 644–45 (6th Cir. 2005) (in products liability suit involving the wheel well of a co-worker's industrial forklift's entry into the operator compartment of plaintiff's forklift, the prudent manufacturer test was "precisely the type of 'situation' in which the 'ordinary consumer' would not have 'an expectation regarding the safety of the product' "); and **boom truck cranes**, *Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 857–58 (M.D. Tenn. 2005) (the prudent manufacturer test applied, as "the appropriate design of a boom truck crane and the safety features of such a crane are not within the 'common knowledge of laymen'").

*Hill*, 760 F. Supp. 3d at 590–91 (quoting *Kines*, 558 F. Supp. 3d at 628–29 (emphasis added)).

Here, plaintiff and defendant agree that the prudent manufacturer test applies, while Hanover argues that the consumer expectation test applies [*See* Doc. 29, pp. 11–13; Doc. 32, pp. 2–4; Doc. 34, p. 7]. To determine which test governs in this case, the Court must examine whether an ordinary consumer has sufficient familiarity with a portable generator to form a reasonable expectation as to its safety. *See Brown*, 432 F.3d at 644.

The record shows, via Adams' expert report, that the generator at issue converts "fuel into electrical power using an internal combustion engine and an alternator" [Doc. 27-2, p. 3]. The report further states that "[t]he engine produces mechanical rotational energy, which is used to turn a rotor inside a stationary stator" [*Id.*]. It notes that this action creates "an electric current by changing the magnetic field around coils of wire, a process known as magnetic induction" [*Id.*]. Lastly, the report states that electricity is regulated by a voltage regulator to provide stable current through the generator outlets for use by

appliances and devices [*Id.*].  Although a generator is not necessarily as complex as a boom truck crane or a forklift, the Court finds that the ordinary consumer generally does not have expectations regarding the characteristics and performance of the innerworkings of portable generators as explained by Adams' report.  *See Brown*, 432 F.3d at 644–45 (explaining that an ordinary consumer does not have expectations regarding a forklift); *see also Johnson*, 406 F. Supp. 2d at 857–58 (finding that the ordinary consumer does not have expectations concerning the design of boom truck cranes).  Thus, unlike a can opener or a coffee pot, the generator at issue is complex, making it more like a fuel-injection engine or an air bag.  *See Ray ex rel. Holman*, 925 S.W.2d at 531.

Moreover, Hanover has not provided any expert testimony or other evidence in support of its argument that the consumer expectation test applies [*See* Doc. 32].  Thus, Hanover has not affirmatively presented and pointed out *specific evidence in the record* sufficient to justify a jury decision in its favor.  *See* Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp.*, 889 F.2d at 111; *Anderson*, 477 U.S. at 256.  Despite Hanover's argument that upcoming depositions of defendant's representatives could inform whether the generator was dangerous or defective, defendant represents that, as of October 31, 2025, no depositions have been requested or scheduled by plaintiff or Hanover [*Id.* at 3; Doc. 33, p. 2].  Nevertheless, "[i]t is not enough to respond to a summary judgment motion by merely asserting that future evidence will raise issues of material fact."  *Williams v. Ford Motor Co.*, No. 83-1225, 1986 WL 110681, at *3 (W.D. Tenn. Feb. 12, 1986) (citations omitted).

Additionally, Hanover's argument that it cannot present facts to justify its position is unpersuasive given that it waited nearly six months after the complaint was filed to move

13

to intervene, and defendant represented that Hanover has not served any formal or informal discovery for information [*See* Docs. 1, 18, 24; Doc. 22, p. 4]. It also appears that Hanover has at least some of the information it claims to need since defendant attached the owner's manual for the generator to its motion for summary judgment [*See* Doc. 28-3, pp. 70–95; Doc. 32-1, p. 2].

Thus, given the complexity of the generator at issue, the Court finds that the prudent manufacturer test is the appropriate standard in this case. As a result, plaintiff must offer competent and admissible expert testimony "with respect to the prudence of a defendant's decision to market the product." *Kines*, 558 F. Supp. 3d at 628 (citations omitted). Here, Judge Poplin ruled that plaintiff's expert report of Cagwin violates Rule 26, and she excluded his expert testimony under Rule 37 [Doc. 41]. Plaintiff has not disclosed another expert witness who can establish that the generator was unreasonably dangerous pursuant to the prudent manufacturer test [*See* Doc. 36-1]. Therefore, plaintiff has not "present[ed] sufficient evidence from which a jury could reasonably find for him." *See Jones*, 625 F.3d at 940 (citing *Anderson*, 447 U.S. at 252); *see also Coffey*, 89 F. App'x at 929–32 (recognizing that "expert testimony is essential to a claim based on the prudent manufacturer test" and affirming a grant of summary judgment where the district court excluded expert testimony presented by a plaintiff). Without Cagwin's testimony, no reasonable jury could conclude that the generator was unreasonably dangerous.

### b.  Defective Condition

Defendant also argues that plaintiff cannot establish that the generator was defective because plaintiff cannot show that his injuries are traceable to a specific construction or

14

design error [Doc. 29, pp. 14–15].  Defendant also maintains that plaintiff failed to follow basic safety procedures, and it warned consumers that opening the gas cap while the generator was running is misuse of the generator [*Id.* at 15].

Plaintiff counters that misuse of a product is a question of fact for the jury to decide, and plaintiff's use should have been foreseeable by defendant [Doc. 34, p. 4].

In reply, defendant contends that plaintiff has not properly disclosed an expert witness that can show that the generator was defective [Doc. 35, p. 6].

Hanover responds that there is a dispute as to whether plaintiff's own actions contributed or caused his injuries [Doc. 32, p. 4].

Defendant replies that Hanover has not offered any rebuttal evidence to show that something was wrong with the generator that caused plaintiff's injuries [Doc. 33, p. 3].

Under the TPLA, a product in a "[d]efective condition" means "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption[.]" Tenn. Code Ann. § 29-28-102(2).  "The mere fact that an injury or damage occurred is not proof that the product is defective."  *Langford v. Gatlinburg Real Est. & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (E.D. Tenn. 2007) (citing *Coffey*, 187 F. Supp. 2d at 967).  Rather, to establish a defective condition, a plaintiff must identify a "specific error in construction or design of the [product]."  *Fulton v. Pfizer Hosp. Prods. Grp., Inc.*, 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993) (quoting *Browder v. Pettigrew*, 541 S.W.2d 402, 404 (Tenn. 1976)). "[F]actors to consider in assessing a product's defectiveness include technology, knowledge, customary designs, etc., of similar products at the time of manufacture" as well as "consumer knowledge about the risks inherent in the use of a product[.]"  *Silver v. Nat'l*

15

*Presto Indus., Inc.*, 884 F.2d 1393, 1989 WL 106290 (Table), at *4 (6th Cir. Sept. 15, 1989) (citations omitted). "It is not required that [a product's] design be perfect, or render the product accident proof or incapable of causing injury." *Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1430 (E.D. Tenn. 1991).

Here, plaintiff has not introduced any evidence from which a reasonable jury could find that the generator was defective, such as proof regarding available technology, customary designs, or evidence of similar products at the time that the generator was manufactured [*See* Doc. 34]. *See Silver*, 1989 WL 106290, at *4; *see also Jones*, 625 F.3d at 940 (citing *Anderson*, 447 U.S. at 252) ("The non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him."). Considering Judge Poplin's ruling excluding Cagwin's testimony [Doc. 41], plaintiff has also failed to properly disclose an expert to render opinions on those topics, and the time for such disclosures has passed. Conversely, plaintiff has submitted evidence that the safety alerts in the generator owner's manual met industry standards [Doc. 27-2, p. 7]. Based on the record, no reasonable jury could conclude that the generator was defective. Thus, the Court need not reach the issue of whether plaintiff misused the generator.

Since plaintiff cannot establish that the generator was unreasonably dangerous or defective, defendant's motion for summary judgment [Doc. 28] on plaintiff's products liability claims, including theories of strict liability, negligence, and breach of implied warranties, is **GRANTED.**

## B.    Punitive Damages

Plaintiff's only remaining claim is his punitive damages claim [Doc. 1 ¶¶ 50−58]. "[I]t is well-settled that a party is entitled to punitive damages only if it recovers actual damages." *Bogle ex rel. Bogle v. Nighthawk* Radiology Servs., LLC, No. M2014-01933-COA-R3-CV, 2016 WL 1398931, at *12 (Tenn. Ct. App. Apr. 6, 2016); *see also JWT, L.P. v. Printers Press, Inc.*, No. M2001-02590-COA-R3-CV, 2002 WL 31397317, at *8 (Tenn. Ct. App. Oct. 24, 2002).  In other words, a claim for punitive damages depends on "a basis for the recovery of compensatory damages."  *Durham v. Johnson & Johnson*, No. 3:20-CV-554, 2021 WL 3745730, at *5 (E.D. Tenn. Aug. 24, 2021) (quoting *Beal v. Walgreen Co*., No. W2004-02925-COA-R3-CV, 2006 WL 59811, at *12 (Tenn. Ct. App. Jan. 12, 2006)).  Since plaintiff is not entitled to actual damages, defendant's motion for summary judgment [Doc. 28] as to the remaining claim for punitive damages is **GRANTED.**

## IV.    Conclusion

For the reasons above, defendant's motion for summary judgment [Doc. 28] is **GRANTED**, and this case is **DISMISSED.**  An appropriate order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan                               
UNITED STATES DISTRICT JUDGE

17